FILED - MQ
April 6, 2009 10:59 AM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: cam /

UNITED STATES DISTRICT COURT
IN THE WESTER DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

RYAN RINTALA
    Plaintiff

**2:09-cv-82**
Robert Holmes Bell, U.S. District Judge

-vs-                    Case No.
                          Hon.

LAW OFFICE OF CURTIS BARNES, PLC,
KEVIN GRAVES,
PATTY ARELLANO,
    Defendant

## COMPLAINT & JURY DEMAND

*Ryan Rintala states the following claims for relief:*

### Jurisdiction

1. This court has jurisdiction under the FDCPA, 15 U.S.C. §1692k(d) and 28 U.S.C. §§1331,1337.

2. This court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims.

### Parties

3. The Plaintiff to this lawsuit is Ryan Rintala who resides in Chassell, MI 49916.

4. The Defendants to this lawsuit are as follows:

    a. Law Office of Curtis Barnes, PC ("LOCB") which is a corporation doing business in Michigan.

    b. Kevin Graves ("Mr. Graves") who is a debt collector and at all relevant times acted agent of LOCB.

    c. Patti Arellano ("Mrs. Arellano") who is a debt collector and at all relevant times

acted agent of LOCB.

## Venue

5. The transactions and occurrences which give rise to this action occurred in Houghton County and in Greenville County, SC.

6. Venue is proper in the Western District of Michigan.

## General Allegations

7. Some time prior to March 31, 2008 LOCB was engaged by HSBC to collect a debt allegedly owed by Ryan Rintala; alternatively some time prior to March 31, 2008, LOCB purchased a debt previously held by HSBC which was allegedly owed by Ryan.

8. On or about April 10, 2008, LOCB communicated with Ryan for the first time.

9. At that time, Mr. Graves contacted Ryan on his cell phone.

10. Mr. Graves asked if Ryan knew what was happening, and Ryan responded that he did not and did not understand the question.

11. Mr. Graves then went on to explain that Ryan was going to be sued for failing to pay for his motorcycle.

12. At the current time, none of the attorneys listed on the web site for LOCB are identified as licensed to practice within the state of Michigan. As such, LOCB had no present ability to file any lawsuit against Ryan.

13. Mr. Graves proceeded to badger and harass Ryan.

14. When Ryan informed Mr. Graves that he did not have money to pay for the motorcycle, Mr. Grave advised Ryan to use the two credit cards which his parents had given him.

15. Ryan informed Mr. Graves that the credit cards were his parents'.

16. Mr. Graves responded that Ryan's name appeared on the cards.

17. Mr. Graves threatened Ryan with a variety of non-judicial remedies including repossession of goods which were not subject to any lien and execution of everything he owned unless he immediately authorized charges on his parent's credit card.

18. Ryan informed Mr. Graves that he could not do that without his parents authority.

19. Mr. Graves then informed Ryan that he was going to have to get his parents involved or else LOBC would seize Ryan's 2007 Civic Coupe that he had purchased with his former girlfriend, along with everything else that Ryan owned.

20. Mr. Graves and LOBC had no present intent or legal ability to go forward with these threats.

21. Mr. Graves then demonstrated his possession of financial data regarding Ryan's past credit transactions with his parents, intimate details of Ryan's financial history, and financial information concerning Ryan's parents.

22. Mr. Graves intended that the demonstration of this information would intimidate and frighten Ryan.

23. Ryan was frightened and intimidated by Mr. Graves ability to obtain that information.

24. Mr. Graves used his knowledge of Ryan's financial history to further intimidate and abuse Ryan, and impliedly threaten action against Ryan's parents.

25. Mr. Graves went on to explain that Ryan's possession of available credit on the credit cards would be used adversely against him in court and would be used as persuasive evidence against him in those proceedings.

26. Based on these intimidation tactics and illegal threats, Mr. Graves convinced Ryan to particpate in a three-way call with his mother.

27. Mr. Graves immediately initiated a three-way conference call with Mrs. Rintala in order to secure payment on her credit card.

28. Neither Mrs. Rintala nor Mr. Rintala (Gordon) were liable on the debt to HSBC.

29. Once connected with Mrs. Rintala, Mr. Graves informed Mrs. Rintala that her son was "in trouble" and insisted on immediate payment for the account from her.

30. Mr. Graves restated a number of threats to the financial well-being of her son unless she immediately authorized payment.

31. Mr. Graves specifically threatened an immediate lawsuit against Ryan unless she agreed to pay the debt.

32. Mr. Graves informed Mrs. Rintala that he had found out that Ryan was an authorized user for a Discover Card with an available credit limit of $10,000, and a Chase Card with an available credit limit of $24,500.

33. Each of those accounts were attributable to Mr. and Mrs. Rintala.

34. Mr. Graves proceeded to attempt to collect the debt from Mrs. Rintala, stating that they should pay for their son's debt with one of these cards.

35. Mr. Graves effectively threatened Mr. and Mrs. Rintala with legal action by advising her against fighting the debt, because if the matter went all the way to court they would have no leg to stand on.

36. Mr. Graves further advised that a judge would look upon the Rintala's ability to pay off the debt with one of these credit cards and ask," Why didn't you just pay it - the funds were available."

37. Mr. Graves informed Mrs. Rintala that the judge would then rule in favor of Mr. Barnes, and

the Rintalas would end up paying over double the amount in court and related legal fees.

38. Mr. Graves said if a judgment like this was ever taken against Ryan, he would be ruined financially for life - would never again be eligible for a car or home loan.

39. Mr. Graves advised Mrs. Rintala to pay immediately with one of the credit cards.

40. After learning that over $3,000 fees had accrued Mrs. Rintala questioned those fees, and Mr. Graves informed her that she was lucky that there were not more fees charged.

41. Having received no prior notice of the call or proof that the debt was owed to LOCB or identifying LOCB as an agent of a legitimate creditor of her son's, Mrs. Rintala informed Mr. Graves that she was not comfortable providing personal banking information on a cell phone.

42. Mr. Graves yelled "ARE YOU KIDDING - NO LAWYER OR JUDGE WOULD STAND FOR SOME STUPID EXCUSE LIKE THAT!"

43. Mr. Graves informed Mrs. Rintala that he would allow one day for the funds to be available through her checking account, impliedly threatening further action which he had neither the authority or ability to take.

44. Mr. Graves, then demanded the routing and account numbers to Mrs. Rintala's bank account.

45. Mrs. Rintala provided this information.

46. Mr. Graves then requested three references from Mrs. Rintala.

47. Ryan could not give this information without getting off the phone, where he would be able to access the files stored in his cell phone. Mr. Graves said, "What about a Mr. David Jacobson - your son's uncle?"

48. When Mrs. Rintala questioned how Mr. Graves could have access to such information, he responded: "You would be amazed what type of information I have accumulated about you!"

49. Mr. Graves ended the phone call with information about himself. That he was "Mr. Graves - Direct Liaison to Attorney at the office of Curtis Barnes". He gave his phone number as 866-477-8222 ext. 4203.

50. After consulting with family friends and her personal banker, Mrs. Rintala cancelled the payment with her bank and took steps to stop the payment by closing her account.

51. On or about April 15, 2008, Mr. Rintala called LOCB to talk to Mr. Graves about the events of the prior week.

52. Mr. Rintala made contact with a receptionist at LOCB and identified himself as Ryan Rintala's father.

53. Mr. Rintala asked to speak with someone about the loan payment.

54. After identifying the case, Mr. Rintala was informed that Mr. Graves was in the Ohio office of LOCB and he could talk to either Peter or Patty.

55. Shortly thereafter, Mr. Rintala spoke with Patty Arellano.

56. Mr. Rintala briefly explained the situation.

57. In response, Ms. Arellano informed Mr. Rintala that payment would have to be made that same day the matter from going to court.

58. Mr. Rintala asked if LOCB had the title for the motorcycle.

59. Ms. Arellano again threatened litigation unless prompt action was taken by Mr. Rintala.

60. Mr. Rintala requested documentation, and that the information be provided.

61. In response, Ms. Arellano faxed the information to a publicly accessible fax machine at a time when she knew or had reason to know that the debt information could be viewed by third parties.

62. That information was in fact viewed by third parties causing Mr. Rintala embarrassment and frustration.

63. In a later conversation on April 28, 2008 Ms. Arellano reiterated her threats of suit, costs and fees against Ryan unless Mr. Rintala paid the debt for his son.

64. At no time did LOBC send Ryan a notice conforming to the requirements of 15 U.S.C. § 1692g.

### COUNT I – Fair Debt Collection Practices Act (LOCB)

65. Mr. Rintala incorporates the preceding allegations by reference.

66. At all relevant times LOCB – in the ordinary course of its business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

67. LOCB is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

68. At all times relevant to this complaint, LOCB sought to collect a "consumer" debt from Mr. Rintala.

69. LOCB actions to collect this alleged debt from Mr. Rintala violated the provisions of the FDCPA including, but not limited to:15 U.S.C. §§1692b(1), 1692b(2)1692b(3), 1692c(b), 1692d(1), 1692e, 1692e(2), 1692e(3), 1692e(4), 1692e(5), 1692e(10), 1692f, 1692f(6) and 1692g(a).

70. Ryan Rintala has suffered damages as a result of these violations of the FDCPA.

### COUNT II – Michigan Occupational Code (LOCB) as alternative to claims under the Michigan Collection Practices Act

71. Ryan Rintala incorporates the preceding allegations by reference.

72. LOCB is a "collection agency" as that term is defined in the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

73. Ryan Rintala is a debtor as that term is defined in M.C.L. § 339.901(f).

74. LOCB's foregoing acts in attempting to collect this alleged debt against Mr. Rintala constitute violations of the MOC including but not limited to the following M.C.L. §§ 339.915(a), 339.915(e), 339.915(f), 339.915(n), 339.915(q), and 339.918.

75. Ryan Rintala has suffered damages as a result of these violations of the MOC

76. These violations of the MOC were willful.

## COUNT III – Michigan Debt Collection Practices Act (LOCB)as alternative to claims under the Michigan Occupational Code

77. Ryan Rintala incorporates the preceding allegations by reference.

78. LOCB is a "regulated person" under the Michigan Debt Collection Practices Act ("MDCPA"), M.C.L. § 445.251(g)(xi).

79. LOCB's foregoing acts in attempting to collect this alleged debt against Ryan Rintala constitute violations of the Michigan Collection Practices Act, M.C.L. § 445.251 *et seq.* including, but are not limited to, the following: M.C.L. §§ 445.252(a), 445.252(e), 445.252(f), 445.252(n), and 445.252(q).

80. Ryan Rintala has suffered damages as a result of LOCB's violations of the Michigan Collection Practices Act.

81. LOCB's violations of the Michigan Collection Practices Act were willful.

## Demand For Judgment for Relief

8

82. *Accordingly, Ryan Rintala requests that the Court grant:*

 a. *Actual damages for items including emotional distress, mental anguish, frustration, humiliation, and embarrassment.*

 b. *Statutory damages.*

 c. *Treble damages.*

 d. *Statutory costs and attorney fees.*

Respectfully Submitted,

LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC

By: _____
Ian B. Lyngklip (P47173)
Attorney For Ryan Rintala
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
IanLyngklip@Att.Net

Dated: March 26, 2009